# PUBLIC GRAIN AND STOCK EXCHANGE ET AL.

## v.

# JULIAN KUNE.

1.  CHECK NOT INDORSED—EQUITIES.—Where a check is not indorsed by the drawee, the party to whom it is given does not occupy the position of a *bona fide* holder for value, but the check is open to all defenses and equities.

2.  SAME—FRAUDULENT REPRESENTATIONS—NOTICE TO BANK.—A bill in chancery brought by complainant against defendants, his son, the bank and the stock exchange, praying that a certain check for $500, drawn by complainant upon said bank payable to the order of the son, and alleged to have been obtained by fraudulent representations and without consideration, be declared null and void and ordered to be canceled. The check was delivered by the son to the stock exchange without indorsement, as a margin to protect a deal in stocks, but on the same day and before the check had been presented for payment at the bank, the son notified the bank not to pay it. The officers of the bank, however, said that they could not refuse payment without notice from the complainant, the drawer, and thereupon certified the check. *Held*, that the finding of the court below that the check was obtained from complainant by fraudulent representations and without consideration was sustained by the evidence; that the bank was duly notified not to pay or certify the check before it was presented for certification; that the decree that said check was null and void and that it be canceled, and that said bank place to complainant's credit the amount of the check, was proper.

3. SAME—BANK'S NEGLIGENCE.—The bank can not complain that while the decree requires it to place the amount of the check to the complainant's credit, it fails to protect the bank against the possibility of future litigation by requiring a surrender and actual cancellation of the check. In a suit in which the bank was praying no relief, the court was not bound to protect it against the consequences of its own negligence.

APPEAL from the Superior Court of Cook county; the Hon. GWYNN GARNETT, Judge, presiding. Opinion filed July 28, 1886.

Mr. ORVILLE PECKHAM and Mr. A. B. JENKS, for appellants; that payment of checks can not be stopped in Illinois even by the drawer, as against a *bona fide* holder for value, cited Un. Nat. Bk. v. Oceana Co. Bk., 80 Ill. 212.

A certified bank check is the negotiable obligation of the bank which certified it: 2 Daniel on Negotiable Instruments, 3d Ed., § 1603; Bickford v. First Nat. Bk., 42 Ill. 238.

Messrs. BECK & CHARLTON, for appellee; that the fact that the check was never indorsed by the payee destroys its commercial quality, cited Garfield v. Berry, 5 Bradwell, 355; Roosa v. Crist, 17 Ill. 450.

BAILEY, P. J. This was a bill in chancery brought by Julian Kune against the Public Grain and Stock Exchange, the First National Bank of Chicago and Fred G. Kune, praying that a certain check for $500, drawn by the complainant upon said bank, payable to the order of Fred G. Kune and by him delivered to said Grain and Stock Exchange, be declared null and void and ordered to be canceled. It appears that said Public Grain and Stock Exchange was a corporation engaged in the business of buying and selling grain, provisions, stocks, bonds, etc., and that in June and July, 1885, Fred G. Kune, who is a son of the complainant, was engaged in the business of buying and selling stocks in the city of Chicago, several of said transactions being with said Exchange, such transactions being carried on by said Fred G. Kune in his own name, but really as the agent and broker of one Lamphere, of Detroit,

Michigan.   At that time Julian Kune & Co., a firm consisting of the complainant and one Boenert, had in their hands certain money of said Lamphere, and prior to July 4, 1885, that firm advanced money on Lamphere's order to be deposited by Fred G. Kune as margins upon said contracts, and the moneys realized from said transactions were turned over to said firm.   On the 4th day of July, 1885, an arrangement was made between Lamphere and said firm by which it was agreed that to enable Fred G. Kune to carry on further dealings in stocks for Lamphere, said firm should deposit $2,500 of Lamphere's money in some bank to the credit of the complainant, and that said money should be drawn as needed by Fred G. Kune in carrying on his dealings for Lamphere upon checks to be signed by the complainant.   In pursuance of this arrangement various sums of Lamphere's money, amounting to about $2,500, were deposited by said firm in the First National Bank of Chicago, to the complainant's credit.

After several checks had been drawn upon said fund, Fred G. Kune met the complainant, and told him that he needed $1,000 to be used as a margin and asked the complainant for that amount in two checks of $500 each.   The complainant thereupon drew two checks as requested and delivered them to Fred G. Kune.   Several days afterward the complainant learned from Fred G. Kune that he had not had occasion to use said checks, but had them still in his possession, and thereupon the complainant upbraided him for keeping said checks, telling him that he ought not to be carrying said checks around.   Fred G. Kune explained that, as the market did not go against him as he expected, he did not have to use the checks, but thought he would keep them with him, so that in case of a fluctuation in the market he would have them at hand.   The complainant then told him that he would give him other checks when he needed them, but that he must destroy those.   Fred G. Kune then said that he would cancel them, and accordingly took his cash book in the presence of the complainant and marked said checks "canceled," and at the same time destroyed what the complainant supposed were the two checks.   He in fact destroyed but one of

them, and drew the other and used the money in some transaction of his own. Shortly afterward, Fred G. Kune needing money as a margin upon a contract for certain stocks which he had purchased for Lamphere, applied to the complainant for a check for $500, and the complainant supposing that both of the previous checks had been destroyed, and having no notice to the contrary, drew a $500 check as requested, payable to the order of Fred G. Kune, and gave the same to him. Fred G. Kune handed said check to said Grain and Stock Exchange without indorsing it, but on the same day, and before the check had been presented at the bank for payment, notified the bank not to pay it. At that time the balance in the complainant's favor on his account with the bank was only $492.13. The officers of the bank, in reply to said notice, said that they could not refuse payment without notice from the complainant, the drawer. Fred G. Kune thereupon went immediately to the complainant and confessed to him the facts in relation to his having drawn the former check instead of destroying it, and the complainant at once wrote a notice to the bank not to pay the check and handed it to Fred G. Kune. The latter returned to the bank and delivered the notice, but in the meantime the check had been presented by the officers of the Exchange, who, at the same time deposited in the bank to the complainant's credit the sum of $7.87, so as to make the account equal to the check, and the bank had then certified the check and charged its amount to the complainant's account. At the hearing on pleadings and proofs, the court found that said check was obtained from the complainant by Fred G. Kune by fraudulent representation and without consideration; that said bank was duly notified not to pay or certify said check before it was presented for certification; and it was decreed that said check was null and void and was canceled, and that said bank place to the credit of the complainant $500, the amount of the check; that the complainant pay into court, for the benefit of said Exchange, said sum of $7.87, and that the complainant recover from said Exchange his costs. From this decree both said Exchange and said bank have appealed to this court.

Public Grain and Stock Exchange v. Kune.

As the check was not indorsed by the drawee, the Exchange can not occupy the position of a *bona fide* holder for value, but the check is open to all defenses and equities which would have been available if it had remained in the hands of the drawee.   The only proposition urged by the counsel for the Exchange is, that the court below erred in finding that said check was obtained by fraud and without consideration. This presents a mere question of fact upon which the finding of the chancellor, who saw and heard the witnesses, must be held to be final unless it appears to be clearly against the preponderance of the evidence.   The testimony of the complainant states the facts substantially as above set forth, and in our opinion his testimony is met with no clear or substantial contradiction.   It is true his relationship to Fred G. Kune might be sufficient to give countenance to a suspicion of collusion between them, but in the absence of evidence tending to prove collusion, the mere fact of such relationship can not aid the defendants.   The argument for the Exchange is based mainly upon the fact which may perhaps be gathered from all the evidence, that at the time the last check was drawn, the actual balance in the complainant's favor on his account at the bank was substantially as he supposed it to be, notwithstanding the fact that the prior $500 check, which he supposed was destroyed, had been drawn.   It does not appear, however, that he had kept in mind a careful reckoning of the checks previously drawn, but rather the contrary; and the fact that he supposed that there was only about $500 to his credit when he drew the check in question, when there would have been about $1,000 if the previous check had not been drawn, is not necessarily, under the circumstances, inconsistent with his testimony in relation to the fraud practiced upon him.   We see no reason, therefore, for disturbing the finding of the chancellor as to said question of fact.

The bank complains that while the decree requires it to place the amount of the check to the complainant's credit, it fails to protect the bank against the possibility of future litigation by requiring a surrender and actual cancellation of the check.   We are of the opinion that, under the circumstances

of this case, the bank has no just grounds of complaint. The certification of the check by which the bank assumed an absolute liability to the holder, was a mere voluntary act on its part which it was under no legal duty to perform. The check being for a larger sum than the drawer had on deposit, the bank was neither bound to pay or certify it. If it had merely declined payment, as it was its undoubted right to do, it would have exposed itself to no litigation in relation to the check. But it saw fit, voluntarily, to assume a new liability not within the contemplation of the drawer nor at his instance or in his interest, and it can not well complain, therefore, if a decree obtained at his suit should fail to relieve it from the consequences of its own voluntary assumption of liability.

But we think the notice to the bank was sufficient to at least put it on inquiry, and that its subsequent certification of the check was in its own wrong, and it must therefore bear the consequences of its wrongful act or extricate itself therefrom by affirmative proceedings of its own. The notice not to honor the check was by the drawee, who still held at least the legal title to the instrument, and had an undoubted interest in the question of its payment or certification. He was certainly in a position where he was entitled to be heard by the bank, and its view that a notice, to be available, must come from the drawer, was in our opinion a mistake.

But even if it was not a notice binding upon the bank, it was sufficient to put it on inquiry as to equities against the check in the hands of the Exchange, and the bank should not have honored the check without making such inquiries as ordinary prudence would have dictated. Turning a deaf ear to the notice, and certifying the check without inquiry as to the equities of the parties was an act of negligence, and the court was not bound, in a suit in which the bank was praying no relief, to be solicitous to protect it against the consequences of such negligence. We are of the opinion that the decree was warranted by the evidence, and it will therefore be affirmed.

Decree affirmed.