84 103
s183s475

---

# First National Bank of Du Quoin v. William S. Keith.

1. CITIES AND VILLAGES—*Power to Fix the Fiscal Year.*—The power of municipalities over the fiscal year is given by statute in general terms. No prohibition is laid on the council from again exercising the power in case an altered state of affairs arises requiring a change in such fiscal year.

2. SAME—*Ordinance Fixing the Fiscal Year—Administrative.*—An ordinance fixing the fiscal year of a municipal corporation is an administrative measure and is subject to repeal.

3. SAME—*Effect of Ordinance Fixing the Fiscal Year.*—The fixing of the fiscal year by ordinance does not repeal Section 1, Article VII, Chap. 24, R. S.; but simply supersedes it while the ordinance is in force, and when it is repealed the fiscal year is then fixed again by the statute.

4. SAME—*Power to Bind a Succeeding Council.*—In administrative matters it is not within the power of one city council to bind a succeeding council.

5. SAME—*Construction of Sections 1, 2 and 3 of Art. 7, Chap. 24, R. S.* —The controlling idea of the legislation contained in Sections 1, 2 and 3 of Article VII, Chap. 24, R. S., is that no city council shall pass an appropriation bill, except during the first quarter of its fiscal year, and when once it has passed such a bill it can not change its fiscal year so as to pass another appropriation bill. But a new and incoming council, elected in the fiscal year for which such appropriation bill is passed, is not bound by the ordinance fixing the fiscal year by the prior council, and when once the new council changes the fiscal year and passes an appropriation bill during the first quarter of the year, such new council will in turn be bound by the limitation not to pass another appropriation bill.

6. CHECKS—*Rights of Holders.*—A check-holder may sue the bank on which the check is drawn, provided there is sufficient money of the drawer on hand to pay it, and while the payment of a check may be countermanded by the drawer, when the same is given without consideration, the payment of a check indorsed to a *bona fide* holder can not be so countermanded.

**Assumpsit,** on a check. Trial in the Circuit Court of Perry County; the Hon. MARTIN W. SCHAEFER, Judge, presiding. Finding and judgment for plaintiff; appeal by defendant  Heard in this court at the February term, 1899. Affirmed. Opinion filed September 5, 1899.

**Statement.**—This case was tried before the court and the record shows the following state of facts:

By an ordinance of the city council of the city of Du Quoin, passed June 11, 1897, the fiscal year of the city was fixed to begin August 1st thereafter, and to end July 31st the following year.

On September 18, 1897, the city council, by ordinance, passed an appropriation bill containing, among other items, one of "$3,500 for water works," which a previous ordinance had provided should be built.

H. A. Keith & Co. did work for the city, in partially

constructing the works, to the amount of $3,000, for which the city paid in April, 1898.

On May 20, 1898, the city by ordinance changed its fiscal year so as to begin on the date established by law for election of municipal officers of the city, and to end on the day prior to the city election of the succeeding year.

On June 10, 1898, the city council passed an appropriation bill which contained an item of " $9,408 for water works."

On August 12, 1898, the city entered into a contract with H. A. Keith & Co., by which the latter agreed to finish the water works for the sum of $9,408, the city to pay $8,000 of the sum in cash, as the work was done, and the balance on the completion of the works.

On September 9, 1898, the city council allowed a bill of " H. A. Keith & Co., for labor and material furnished under contract of water works, $4,000."

A warrant for the amount was duly issued, signed by the mayor and city clerk.

W. A. Kelley was city treasurer, and he kept the funds of the city on deposit with appellant, in the name of " W. A. Kelley, Treas." In the absence of special instructions from Kelley, appellant paid all warrants of the city when presented. Before the $4,000 warrant was presented to the bank, Kelley instructed the cashier of the bank not to pay it. On September 10, 1898, Keith & Co. presented the warrant to the bank for payment, which was refused. Thereupon they took it to the city treasurer, Kelley, who took it up, and issued to Keith & Co. a check on appellant for $4,000, signing it " W. A. Kelley, City Treas." This check appellant, claiming to act under the directions of Kelley, refused to pay, notwithstanding there was more than sufficient funds standing to the credit of " W. A. Kelley, City Treas." on the books of the bank to pay it. The check went to protest and afterward became the property of appellee, who brought suit on it in assumpsit. Several pleas were filed by appellant to the declaration, setting up as a defense that the contract with the city was

*ultra vires* and void.   The court rendered judgment for the plaintiff for the amount of the check and interest, and the defendant has brought the case here by appeal.

GEO. W. WALL and BENJAMIN W. POPE, attorneys for the appellant.

W. W. CLEMENS and W. A. SCHWARTZ, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

It is contended by appellant that when the city fixed and declared by ordinance the beginning and termination of its fiscal year, its power over the subject was forever thereafter exhausted.

The section of the law under which a city or village is given the power to establish its fiscal year is as follows:

" The fiscal year of each city or village organized under this act, shall commence at the date established by law for the annual election of municipal officers therein, or at such other times as may be fixed by ordinance."   Hurd's R. S. of 1897, Chap. 24, Article VII, Sec. 1.

It will be seen that the power of municipalities over the fiscal year is given in general terms.   No prohibition is laid on the council from again exercising the power in case an altered state of affairs should arise requiring a change in the fiscal year.

Such an ordinance, being an administrative measure, is subject to repeal.   17 Am. & Eng. Enc'y of Law, page 246. The fixing of the fiscal year by ordinance does not repeal the section of the law above quoted, but the ordinance simply supersedes the law while the ordinance is in force, but when it is repealed the fiscal year is then fixed by law.   The ordinance of May 20, 1898, fixing the fiscal year the same as it was before the adoption of the ordinance of June 11, 1897, was, in effect, neither more nor less than a repeal of the latter ordinance.

In all administrative matters it is not within the power of one city council to bind a succeeding council.   But it is

contended by appellant's counsel that because of the following provision of Section 2 of said Article VII, viz.: " No further appropriations shall be made at any other time within such fiscal year," etc., that the appropriation ordinance of June 10, 1898, was void, and in consequence no valid contract could have been made by the city with H. A. Keith & Co. The reason given for this view is, that when the appropriation ordinance of June 10, 1898, was passed, the fiscal year that existed at the time the appropriation ordinance of September 18, 1897, was passed had not expired, and hence two appropriation ordinances were passed within the fiscal year as fixed by the ordinance of June 11, 1897. But this reasoning ignores the repeal of the ordinance of June 11, 1897, by the ordinance of May 20, 1898.

What is prohibited by section 2 of the article referred to is that no *single* council shall pass more than one appropriation ordinance, and since the two appropriation ordinances were passed by separate councils neither appears to have been passed in violation of the law.

The controlling idea of the legislation contained in sections 1, 2 and 3 of the article is, that no city council shall pass an appropriation bill, except during the first quarter of its fiscal year, and that when once the council has passed such a bill, *such council* can not change its fiscal year so as to pass another appropriation bill. But why should a new and incoming council, elected in April of each year, be bound by the ordinance fixing the fiscal year by the prior council? When once the new council changes the fiscal year, and passes an appropriation bill during the first quarter of that year, such new council will in turn be bound by the limitation not to pass another appropriation bill; and in this way each council can only pass one appropriation bill.

It is hard to see how there was an increase in the expenditure of the city's money in the appropriations for the years 1897 and 1898 by the mere change of the fiscal year. A kindred question of power was before the Supreme Court in Swarth v. People, 109 Ill. 621.

Under Section 8 of Article X of said Chapter 24, the municipal year was the time elapsing between the annual elections, unless otherwise provided by ordinance. The municipal year of the city of Chicago, not having been fixed by ordinance, commenced on the 7th day of April, 1883, and ended on April 1, 1884, that municipal year being less than a calendar year. Power 46 of Article V of said chapter, prohibited the city council from granting liquor licenses for a longer period than the municipal year in which they should be granted; such licenses were granted in the month of June, 1883, to expire April 7, 1884, pursuant to an ordinance fixing the municipal year to expire at that date; hence, in strictness of construction, all licenses issued to expire later than April 1, 1884, ought to have been deemed invalid.

It is true, the court says that the licenses would in any event be valid up to April 1, 1884; but the court also says "that the city council had full power to change the municipal year."

As to the check upon which this suit is brought, and which took up the warrant drawn on the city treasurer, it was signed " W. A. Kelley, City Treas."

Kelley, after its issuance, directed the bank not to pay it, hence it is argued that the check was drawn on Kelley's private funds, and that he had the right to countermand its payment. Kelley admits he had no private funds in the bank. Under Section 5, of Article VII of said Chapter 24, the city treasurer must have kept his books and accounts in such manner as the ordinances of the city required.

We therefore assume that the manner in which Mr. Kelley kept the accounts was in obedience to law, and not in defiance thereof. When the warrant was drawn on him, and he took it up, this act constituted the last step of the ministerial duties by which the city of Du Quoin appropriated its money to H. A Keith & Co.

The attempted countermand of payment of the check was a nullity, because it was, under the assumption, made the act of the city of Du Quoin, and the countermand ought

to have come from the same power that issued it. But if it be admitted that this countermand of payment made by Kelley was the act of the city, there was a good and lawful consideration for the check.

In this State a checkholder may sue the bank on which it is drawn, provided there is sufficient money on hand to pay it. Merchant's National Bank v. Ritzinger, 20 Ill. App. 27. And while the payment of a check may be countermanded, when the same is given without consideration (Public Grain and Stock Exchange v. Kune, 20 Ill. App. 137), the payment of a check indorsed to a *bona fide* holder can not be countermanded by the drawer. Union National Bank v. Oceana County Bank, 80 Ill. 212. But the case of a payee who holds a check for value received by the drawer is not different from that of a *bona fide* purchaser, as to rights created under it.

We are of opinion that the judgment of the Circuit Court is right, and it is affirmed.

MR. JUSTICE WORTHINGTON.

I concur in the conclusion reached, but not in the reasoning by which it is reached.